IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CARALYN FRIEDLY, Individually and on Behalf of All Others Similarly Situated;<br><br>Plaintiff,<br><br>vs.<br><br>UNION BANK AND TRUST COMPANY,<br><br>Defendant. | **4:21CV3105**<br><br>**FINDINGS AND RECOMMENDATION** |

Plaintiff Caralyn Friedly, an employee of Defendant Union Bank and Trust Company ("UBT"), alleges on behalf of herself and others similarly situated that Defendant UBT failed to accurately calculate and pay overtime wages in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. 201 *et seq.* Plaintiff's complaint alleges a claim under federal law, and this court has original jurisdiction under 28 U.S.C. § 1331.

Pending before the court is Plaintiff's Motion for Conditional Class Certification (Filing No. 16). For the following reasons, the motion should be granted, and notice be provided as set forth herein.

BACKGROUND

Plaintiff seeks classification of a conditional collective class consisting of "[A]ll hourly employees of Defendant who received a bonus in connection with work performed in at least one week in which they worked over forty hours since May 19, 2018." (Filing No. 16-1 at CM/ECF p. 2, ¶ 5).

Plaintiff asserts that from 2014 until February 2019, she earned a salary working for UBT as an assistant branch manager, but then Defendant began paying her an hourly wage. (Filing No. 16-7 at CM/ECF p. 1). She was paid bonuses if the branch, or she individually, met certain performance goals. These bonuses were based upon measurable data, including length of employment, position, pay, and performance markers. (Filing No. 16-7 at CM/ECF p. 2). Defendant informed her that bonuses are part of the UBT compensation package. Defendant informed other employees of the same payment policy in her role as assistant branch manager, as she was part of the hiring and onboarding process. Plaintiff and other hourly workers regularly worked in excess of forty hours and were paid 1.5x their base hourly rate. Plaintiff had access to her own payment details and the details of others she supervised and observed that UBT did not include the bonuses paid in the base hourly rate when calculating overtime pay.

Plaintiff asserts UBT has a centralized Human Resources Office and standard pay policies, which would be uniform across all UBT locations. Thus, she asserts the putative class includes all hourly employees who earned bonuses across Defendant's entire business. In support of her motion, she submits her own declaration, which contains an assertion that there are in excess of 200 hourly employees and potential members of the putative class, and that based on her communication with other employees, there would be others who would want to join. At the time her motion was filed no opt-in consent forms had been filed.

In opposition to the motion for class certification, UBT submits that Plaintiff has not met her burden to show that she is similarly situated to the members of the putative class or that other individuals desire to opt into this lawsuit.

2

ANALYSIS

A. Conditional Certification

i.      Standard

Section 216(b) of the FLSA allows named plaintiffs to sue "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. The sole consequence of conditional certification under 29 U.S.C. § 216 is the sending of court-approved written notice to employees who in turn become parties to a collective action only by filing written consent with the court. Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1043 (2016) (assuming, without deciding, that the standard for certifying a collective action under the FLSA is no more stringent than the standard for certifying a class under the Federal Rules of Civil Procedure). The court overseeing the action has discretion to authorize the sending of notice to potential plaintiffs, informing them of the opportunity to opt in. Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 170–71 (1989); see also Bigger v. Facebook, Inc., 947 F.3d 1043, 1046–47 (7th Cir. 2020).

"The plaintiff bears the burden of establishing he or she is similarly situated to other members of the proposed class." Haworth v. New Prime, Inc., 448 F. Supp. 3d 1060, 1066 (W.D. Mo. 2020) (quoting Taylor v. Bear Commc'ns, LLC, No. 4:12-CV-01261-BCW, 2013 WL 3270971, at *2 (W.D. Mo. June 27, 2013) (citation omitted)). "Plaintiffs may be similarly situated when 'they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" Bouaphakeo v. Tyson

3

Foods, Inc., 765 F.3d 791, 796 (8th Cir. 2014)("Bouaphakeo I"), aff'd, 136 S. Ct. 1036 (2016) (quoting Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001)); see also Campbell v. City of Los Angeles, 903 F.3d 1090, 1117 (9th Cir. 2018) ("Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims."). To determine whether a class is similarly situated, "[a] court may consider '(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.'" Bouaphakeo I, 765 F.3d at 796 (quoting Thiessen, 267 F.3d at 1103).

Although the Eighth Circuit has not articulated a standard for conditionally certifying FLSA classes, the majority of the district courts in the Eighth Circuit use the two-step analysis set out in Mooney v. Aramco Services Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995), overruled on other grounds, Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); see also Haworth, 448 F. Supp. 3d at 1066; Kautsch v. Premier Commc'ns, 504 F. Supp. 2d 685, 688-89 (W.D. Mo. 2007) (collecting cases). "First, plaintiff moves for conditional certification at an early stage in the litigation, wherein a class is certified for notice purposes. Then, at the second step, defendants are allowed the opportunity to move for de-certification at the close of discovery." Davis v. NovaStar Mortg., Inc., 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005).

The plaintiff's motion for certification is typically filed at an early stage of the litigation thus requiring a lenient evaluation standard and typically resulting in conditional certification of a representative class. Mooney, 54 F.3d at 1213-14; see also Grayson v. K Mart, 79 F.3d 1086, 1096 (11th Cir. 1996) (noting that the "similarly situated" standard is considerably less stringent than Rule 23(b)(3) class

4

action standards); Del Toro v. Centene Mgmt. Co., LLC, No. 4:19-CV-02635-JAR, 2020 WL 2085650, at *2 (E.D. Mo. Apr. 30, 2020) (stating that at the first stage, conditional certification, courts typically apply a lenient standard); Borup v. CJS Sols. Grp., LLC, No. CV 18-1647 (PAM/DTS), 2020 WL 5988496, at *3 (D. Minn. Oct. 9, 2020) ("The plaintiffs' burden at the first stage is a light one."); Haworth, 448 F. Supp. 3d at 1066 (noting that the similarly-situated threshold requires only a modest factual showing).

"[C]onditional certification at the notice stage requires 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'" Davis, 408 F. Supp. 2d at 815 (quoting Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 678 (D. Colo. 1997). Nevertheless, the plaintiff "must still 'come forward with evidence establishing a colorable basis for their claim that the putative class members were together the victims of a single decision, policy, or plan[.]'" Borup, No. CV 18-1647 (PAM/DTS), 2020 WL 5988496, at *3 (quoting Thompson v. Speedway SuperAmerica LLC, No. 08-1107, 2009 WL 130069, at *5 (D. Minn. 2009)).

At the second step of the process, typically after the close of the opt-in period and discovery, the defendant may move to decertify the collective action if the record reveals that the opt-in plaintiffs are not similarly situated. Mooney, 54 F.3d at 1214. Renewed factual findings can then be made to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named Plaintiff. Gathmann-Landini, No. CV 15-6867 (JMA)(AYS), 2018 WL 3848922, at *9. If they are not, then "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." Id. (quoting Bifulco v. Mortgage Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009)).

5

ii. Friedly's Motion for Conditional Certification

Plaintiff's complaint alleges that she and other hourly employees regularly worked in excess of forty hours per week, and that UBT did not include the nondiscretionary bonuses paid to the hourly employees in their regular rates when calculating overtime pay. She alleges this violates Section 778.208 of Title 29 of the Code of Federal Regulations, which states that all forms of compensation "must be totaled in with other earnings to determine the regular rate on which overtime must be based." (Filing No. 1 at CM/ECF p. 4) (citing 29 C.F.R. § 778.208). Plaintiff's putative class includes employees who worked at all UBT locations and who have job titles and descriptions that do not match her own. However, she has alleged that since bonuses were part of the compensation packages for hourly employees and payroll was managed by a single, centralized Human Resources department, the members of the described putative class were subject to the same "decision, policy, or plan." See Borup, supra.

Although Plaintiff has not specified the exact job duties of other hourly employees, she has alleged that UBT's hourly employees work the same or similar scheduled hours which exceed forty hours per week and she was privy to the payment information of the similarly situated employees at her branch in her role as assistant branch manager. (Filing No. 16-7 at CM/ECF p. 2). Defendants argue that "Plaintiff does not state which employee time sheets she alleges she had access to, how she is familiar with employee schedules outside of her location, or that she even reviewed the employee time sheets that she alleges she had access to[]." (Filing No. 20 at CM/ECF p. 6). In this district, Plaintiff is not obligated to have a complete knowledge of the inner workings of the business, nor is she obligated to present extensive evidence at this stage. Plaintiff need only show a colorable basis to believe that there are similarly situated opt-in class members. See

Walkinshaw v. Saint Elizabeth Reg'l Med. Ctr., 507 F. Supp. 3d 1106, 1123 (D. Neb. 2020).

Defendant argues that conditional certification is improper because Plaintiff has not shown that there are other employees who would like to opt-in to this action. Defendant argues that an employee's belief that others will join the lawsuit is insufficient to establish other similarly situated individuals. See Parker v. Silverleaf Resorts, Inc., No. 3:14-cv-2075-B, 2017 WL 1550522 (N.D. Tex. May 1, 2017); Simmons v. T-Mobile USA, Inc., No. H-06-1820, 2007 WL 210008, *9 (S.D.Tex. Jan. 24, 2007). However, judges in this district have found that an affidavit demonstrating that Plaintiff has spoken to other employees and believes that others would want to join is sufficient at this early stage.[1] Plaintiff's affidavit offered in support of this motion states:

> 15. Based on my experience talking with other Hourly Employees, I believe that there would be others that would want to join this lawsuit if notice were issued and they were made aware of the suit.
>
> 16. I am unable to state the exact number of potential members of Hourly Employees who would fall into the FLSA Collective but believe that the group exceeds two-hundred (200) persons.

(Filing No. 16-7 at CM/ECF p. 3).

---

[1] See Fontenot v. McNeil Indus., Inc., No. 4:17CV3113, 2018 WL 5724863, at *2 (D. Neb. Sept. 19, 2018), report and recommendation adopted, 2018 WL 5724043 (D. Neb. Nov. 1, 2018). The court found that "Plaintiff has sufficiently shown that other welders may want to participate in this action." Plaintiff's affidavit stated:

> I have spoken with several former co-workers who worked for [Defendant] as welders who received a straight time for overtime hours worked. Through these conversations, I know that there is a general interest among the welders in recovering back wages that we are entitled to through this collective action. Based on these conversations, I believe that other ... welders would be interested to learn about their rights and their opportunity to join this lawsuit.

Id. at *2.

Defendants argue that, while the standard for obtaining conditional class certification and issuing notice may be lenient, it is not as lax as Plaintiff purports. At this stage in the case, it is premature to examine the potential difference between the putative plaintiffs' individual circumstances. Defendant will have the opportunity to argue that Plaintiffs are not truly similarly situated if, after discovery is complete, they move to decertify the conditional class.

Based on the record in this case Plaintiff has provided enough factual support for conditional certification; that is, she has presented facts showing that a class of similarly situated employees likely exists and the alleged FLSA-violating policy, if proven, would give rise to class-wide liability. See Bouaphakeo I, 765 F.3d at 796. I recommend the motion for conditional certification be granted.

B. Notice

Once the court certifies the collective action, Plaintiff sends a court-approved notice to the potential class members. The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide "accurate and timely notice concerning the pendency of the collective action, so that [potential opt-in plaintiffs] can make informed decisions about whether to participate." Hoffman-La Roche, 493 U.S. at 170. The content and method of disseminating notice to potential collective members must be approved by the district court. In the notice, the court must respect judicial neutrality and avoid even the appearance of endorsing the action's merits. Hoffman-La Roche, 493 U.S. at 174.

Plaintiff asks the court to: (1) approve the language of her proposed collective action notice, reminders, and consent forms; (2) grant her leave to send the same through U.S. mail and email; (3) grant her leave to send a follow-up email or postcard thirty days after the date of mailing; (4) set a ninety (90) day period in

8

which to distribute the notice and allow for opt-ins; and (6) direct Defendant to provide relevant contact information for potential opt-ins within seven (7) days after this court's order.

Defendant has objected to the notice in form and content, and objects to the length of the opt-in period, as well as the allowable period to provide contact information. Each objection will be addressed in turn.

i.  Case Caption

Defendant objects to Plaintiff's inclusion of a case caption on her proposed notice. UBT asserts that placing the court name in the heading is improper because it may be misconstrued as judicial support for the plaintiff's litigation. See Fontenot v. McNeil Indus., Inc., No. 4:17CV3113, 2018 WL 5724863, at *2 (D. Neb. Sept. 19, 2018), report and recommendation adopted, 2018 WL 5724043 (D. Neb. Nov. 1, 2018). Plaintiff asserts that it is important to include a caption on the notice so that recipients can identify the lawsuit that they are being invited to join and will not confuse the notice for "junk mail."

This district has authorized notice in several recent cases which prominently displayed the case name and number but did not include a full case caption.[2] The appropriate information should be provided on all notice and consent forms as a heading instead of as a case caption in the following style:

---

[2] See Walkinshaw et al v. Saint Elizabeth Regional Medical Center et al, 4:19-cv-3012 (Filing No. 137-12); Oliphant v. Spring Corporation et al, 8:18-cv-353 (Filing No. 26-3); Fontenot v. McNeil Industrial Inc., 4:17-cv-3113 (Filing No. 33 at CM/ECF p. 18).

**NOTICE OF CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION**
in
Friedly v. Union Bank and Trust Company
Case No. 4:21-cv-3105-JMG-CRZ (D. Neb.)

This amended heading would provide the appropriate notice to putative plaintiffs of a legitimate action pending in this district but would maintain neutrality and avoid the appearance of the court endorsing the action's merits.

ii.   Notice Period

Defendant objects to giving class members ninety days to opt-in to the lawsuit, asserting that it will delay the progress of this litigation. Defendant acknowledges Plaintiff's assertion that a 90-day period is necessary because of mail delays but asserts that the problem would be mitigated if Plaintiff provides notice by mail and by email. Defendant counters that forty-five days is sufficient for putative plaintiffs to consider their option, and, if desired, seek the assistance of outside counsel in deciding whether to join the lawsuit. (Filing No. 20 at CM/ECF p. 11).

While Defendants cite to cases in which courts have approved forty-five day notice periods (Filing No. 20 at CM/ECF p. 11), Plaintiff likewise cites to cases in which a ninety day periods have been approved. (Filing No. 22 at CM/ECF p. 11). Defendant argues that a 45-day period is the "standard," but there is no such standard in this district. (Filing No. 20 at CM/ECF p. 11). A survey of recent cases in this district demonstrates that this court has routinely approved opt-in periods between 60 and 90 days.[3] Further, the COVID-19 pandemic has caused mail

---

3 See Walkinshaw v. Saint Elizabeth Reg'l Med. Ctr., 507 F. Supp. 3d 1106, 1122 (D. Neb. 2020) and Oliphant v. Sprint Corp., No. 8:18CV353, 2019 WL 2088052 (D. Neb. Apr. 26, 2019), report and recommendation adopted, 2019 WL 2086003 (D. Neb. May 13, 2019) (approving an opt-in period of 60

delays across the country which have improved but have not completely resolved. So, a 45-day opt-in period could be inadequate to ensure putative plaintiffs have the opportunity to receive mailed notice and evaluate whether to opt-in.

Other than delay of the proceedings, Defendant does not explain why the 90-day proposed period is unreasonable. Allowing 90 rather than 45 days for receipt of completed opt-in forms will not unduly prejudice the Defendant. The 90-day opt-in period will be approved.

### iii. Reminder Notice

The plaintiffs propose sending notice of the lawsuit to potential class members using mail and email, with a reminder email or postcard to be sent 30 days after the initial notice is distributed. Plaintiff's counsel has submitted an affidavit detailing difficulties he has had with mailed notice that was returned undeliverable, as well as issues with receiving completed opt-in forms. He also stated that while electronic notice is effective, sometimes opt-in plaintiffs do not realize they have not completed the final step to *submit* their forms via DocuSign, and the error is not discovered until the opt-in period has closed. (Filing No. 16-6 at CM/ECF p. 5).

While one-time contact via mail may be sufficient to notify potential opt-ins of the action, it doesn't resolve the potential problems associated with opt-in forms mailed back to counsel, but not received. Similarly a one-time contact via email does not resolve the known submission issue for electronic documents. The follow-

---

days); see also Grove v. Meltech, Inc., No. 8:20CV193, 2020 WL 7133568 (D. Neb. Dec. 3, 2020), reconsideration denied, 8:20CV193, 2021 WL 106267 (D. Neb. Jan. 12, 2021) and Scarpino v. Imagination Indus., Inc., No. 8:20CV449, 2021 WL 1267270, at *1 (D. Neb. Apr. 6, 2021) (approving an opt-in period of 90 days).

11

up notice would allow counsel to notify potential opt-in plaintiffs that their mailed consent has not been received or that the DocuSign process was not complete, thus allowing time for any potential issues to be remedied.

Judges in this district have recently found that reminder notices are a reasonable and useful tool to ensure interested plaintiffs are able to timely opt-in to the litigation. See, e.g., Walkinshaw v. Saint Elizabeth Reg'l Med. Ctr., 507 F. Supp. 3d 1106, 1126 (D. Neb. 2020); see also Hussein, 152 F. Supp. 3d at 1198 ("[S]ending a reminder letter, via mail and email, at approximately the 30-day point is reasonable."); Ortiz-Alvarado v. Gomez, No. CIV. 14-209 MJD/SER, 2014 WL 3952434, at *6 (D. Minn. Aug. 13, 2014) ("The Court concludes that one reminder notice is reasonable to ensure that potential class members do receive the Notice and, if they so desire, file a timely opt-in notice."). Defendant argues that sending a reminder could be viewed as the court "endorsing" Plaintiff's position. However, upon review of Plaintiff's proposed reminders (Filing No. 16-3 and Filing No. 16-5), there is nothing that suggests the court endorses participation. Further, the potential appearance of endorsement is decreased by removing the case caption and replacing it with an informational heading, as previously discussed.

    iv.    Legal Advice

Defendant objects to the inclusion of paragraphs 11 and 12 of the proposed notice, arguing that these paragraphs provide legal advice that is unnecessary for informing individuals of their rights with respect to opting into the lawsuit. Plaintiff argues that these paragraphs serve the essential functions of ensuring that each potential opt-in plaintiff feels comfortable and fully informed that joining the lawsuit will not result in termination of their employment and that they may not be precluded from joining because of a pre-existing severance agreement. Plaintiff

argues that removal of these paragraphs will have a chilling effect, and may result in potential opt-in plaintiffs deciding not to participate in fear of retaliation.

The potential of chilled participation in an FLSA action due to fear of retaliation by an employer is a recognized concern. Adkinson v. Tiger Eye Pizza, LLC, No. 4:19-CV-4007, 2019 WL 5213957, at *8–9 (W.D. Ark. Oct. 16, 2019), citing Tinsley v. Covenant Care Servs., LLC, No. 1:14-cv-0026-ACL, 2016 WL 393577, at *8 (E.D. Mo. Feb. 2, 2016) (mentioning the possibility that individuals may not have opted into a previously certified FLSA collective action because of fear of retaliation by their employer). Courts have sometimes alleviated this concern by approving anti-retaliation provisions in an FLSA notice form. See Astarita v. Menard, Inc., No. 5:17-cv-6151-RK, 2018 WL 7048693, at *4 (W.D. Mo. Dec. 7, 2018) (approving anti-retaliation provision in FLSA notice form where the complaint made no claim or allegation of retaliation); Dolgin v. Monsanto Co., No. 4:12-cv-1793-ERW, 2013 WL 4829218, at *4 (E.D. Mo. Sept. 10, 2013) (approving anti-retaliation provision in FLSA notice form despite the defendant's objection).

Upon review of Plaintiffs' proposed paragraphs 11 and 12, the court finds that they do not contain legal advice. Rather, these paragraphs disclose information potential plaintiffs may use to evaluate their eligibility. The form correctly provides that employees cannot be terminated for their participation in a collective action and that a final decision on the effect of a severance agreement must be made by the court. These provisions are appropriate to provide as much information as possible from which putative collective members "can make informed decisions about whether to participate" in this case. Hoffmann-La Roche, 493 U.S. at 170. The paragraphs, as written, should be approved.

    v.    Defendant's Response Period to Provide Contact Information

UBT requests 30 days to compile any information it is ordered to produce, namely the contact information for putative class members. Plaintiff states this information should be provided within a week because time is of the essence. Yet, while case law supports both 45-day and 90-day opt-in periods, Plaintiff has requested the longer, 90-day, opt-in period. In fairness, Defendant should also be permitted additional time to meet its requirements for assuring all putative class members are identified and to the extent possible, their current contact information is provided. Defendant's request for more time is not unreasonable and will not significantly delay the process. The court has considered a 21-day deadline for disclosing contact information, and a three-week period would typically be enough time. But this recommendation is subject to the district judge's approval, and if approved, the order will possibly be entered in the midst of the winter holiday season and, while community transmission of COVID-19 remains high, with associated employee quarantines and absences. Under these circumstances, 30 days is a reasonable deadline for UBT to gather and disclose the last known mailing addresses and email addresses of individuals who currently work and/or previously worked at UBT at any time in the last three years.[4]

IT IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b) that:

1) Plaintiff's Motion for Conditional Class Certification be granted (Filing No. 16), and that the court conditionally approve an FLSA collective action, the opt-in class defined to include:

---

[4] A three-year period is appropriate under the circumstances, and at the conditional certification stage. The statute of limitations under the FLSA is two years, but the period is extended to three years for willful violations. Other courts in this circuit have found that judicial economy is served by conditionally certifying a larger collective and applying the higher statute of limitations because it is not clear in the early stages of the case whether the alleged violation is willful. See Burch v. Qwest Communications, Int'l Inc., 500 F. Supp. 2d 1181, 1191. (D. Minn 2007). Defendant does not object to Plaintiff's request to include employees who worked at UBT for the three years prior to the filing of this action.

> All hourly employees employed by Union Bank and Trust Company who received a bonus in connection with work performed in at least one week in which they worked over forty hours since May 19, 2018.

2) Within thirty (30) days of entry of an order on this matter, Defendant be required to produce, in electronic format, the last known mailing addresses and email addresses of individuals who currently work and/or previously worked at Union Bank and Trust Company at any time during the three years prior to the filing of this case.

3) The plaintiff be permitted to mail the Notice and Consent forms (Filing No. 16-1, and 16-2), and the reminder postcard (Filing No. 16-5), as well as the emailed Notice and Consent forms (Filing No. 16-3 at CM/ECF p. 1, and Filing No. 16-4), and the email reminder notice (Filing No. 16-3 at CM/ECF p. 2) to each potential class member, with the modifications identified and discussed, herein.

4) The opt-in period for joining the conditional class be 90 days from the mailing and/or emailing of the Notice and Consent forms.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 19th day of November, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge